**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KARENLEE H., <br><br> Plaintiff, <br><br> v. <br><br> Andrew SAUL, <br><br> Defendant. | Case No.: 20-cv-1646-AGS <br><br> **ORDER ON PLAINTIFF'S SUMMARY-JUDGMENT MOTION (ECF 13)** |

This Social Security claimant appeals the denial of her disability benefits.

## BACKGROUND

In November 2017, Karenlee H. filed for Social Security disability insurance benefits claiming she had become unable to work in 2015. (AR 172-73.) She alleged she was disabled on account of her left foot fracture and 2015 surgery, shoulder (particularly left shoulder) problems, back pain, osteoarthritis in her knees, hypertension, osteoporosis, obesity, and depression. (*See* AR 12-13.)

The Administration first sent her application to two doctors. They both determined, after review of her medical records, that she was capable of "medium" exertion work (*see* AR 78, 93), which means she can lift 50 pounds, frequently carry 25 pounds, and walk or stand six hours of an eight-hour day. *See* SSR 83-10, 1983 WL 31251, at *6. Because there were jobs that she could do with that capability, her disability request was denied.

Karenlee then requested a hearing before an Administrative Law Judge to reconsider those denials. (AR 117-18.) While waiting for the ALJ hearing, a CT scan confirmed that her left foot was broken again. (AR 17, 724.) Two months later, she had a second surgery on her left foot. (AR 726-27.) Healing from that surgery took several months, during which she was gradually allowed to place some weight on the foot. (AR 730-35.) Five months

post-surgery, she was cleared to "weight bear as tolerated" on her left foot and use a cane. (AR 688.)

Less than a month later, the Social Security Administration sent Karenlee to Dr. David T. Easley for an examination. (AR 669-75.) He examined, among other things, her feet, shoulders, back, knees, and gait. (*See* AR 672-74.) Unlike the last two doctors, Dr. Easley concluded that she was capable of only "sedentary" tasks: sitting for six hours during an eight-hour workday, walking or standing the other two, lifting and carrying 10 pounds occasionally, and less than 10 pounds frequently. (AR 675.)

This distinction became critical, because if Karenlee were limited to sedentary work, given her age, the ALJ concluded she would be disabled. (AR 64.) A vocational expert testified that even if she were limited to four hours of standing and four hours of sitting, given her age and other restrictions, Karenlee would still be considered disabled. (AR 62.) But the expert also testified that if Karenlee was restricted, along with her other limitations, to light exertion—"standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday" and lifting "no more than 20 pounds" with "frequent lifting of objects weighing up to 10 pounds"—she could work and therefore would not be disabled. *See* SSR 83-10, 1983 WL 31251, at *6; (AR 60-61).

The ALJ determined that the medium exertional level found by the state-agency doctors—who reviewed Karenlee's records before her second foot surgery—was "less restricting than the overall records supports." (AR 21.) But the ALJ was also concerned Dr. Easley's one-time evaluation, recommending a sedentary exertional level, may "have been influenced by then-limiting residual effects of the claimant's recent left foot surgery . . . ." (AR 20.) So the ALJ split the difference and concluded that Karenlee was limited to light work. (AR 15.) Based on the vocational expert's testimony, he found Karenlee not disabled. (AR 23.)

**DISCUSSION**

Karenlee appeals, arguing that the ALJ: (1) provided insufficient reasons for rejecting the sedentary exertion level recommended by Dr. Easley, (2) did not sufficiently support his light-exertion conclusion, and (3) inappropriately discounted her testimony.

**A.   Dr. Easley's Recommended "Sedentary Work" Restriction**

Before considering the ALJ's treatment of Dr. Easley's opinion that Karenlee was restricted to sedentary work, the Court must clarify the current state of the law regarding medical-opinion evidence.

**1.   *The Evolving Law on Medical-Opinion Evidence***

For decades, the Social Security Administration considered medical opinions under what became known as the "treating-physician rule," *see* 20 C.F.R. § 404.1527, and interpretations of that regulation led to a large body of case law. *See, e.g.*, *Trevizo v. Berryhill*, 871 F.3d 664, 675-77 (9th Cir. 2017); *Arakas v. Comm'r of Soc. Sec.*, 983 F.3d 83 (4th Cir. 2020); *Jones v. Astrue*, 647 F.3d 350 (D.C. Cir. 2011); *Calvert v. Firstar Finance, Inc.*, 409 F.3d 286 (6th Cir. 2005); *Gilbertson v. Allied Signal, Inc.*, 328 F.3d 625 (10th Cir. 2003); *Hackett v. Barnhart*, 395 F.3d 1168 (10th Cir. 2005); *Leggett v. Chater*, 67 F.3d 558 (5th Cir. 1995). But for claims filed after March 2017, like this one, that regulation was replaced with 20 C.F.R. § 404.1520c. The new regulation streamlined the consideration of medical opinions, removing the old rule's medical-provider hierarchy and increasing ALJ discretion by cutting down the number of considered factors.

Karenlee argues that the change in regulations should have little-to-no effect on how this Court reviews Social Security cases. (ECF 16, at 2.) And some courts agree. *See, e.g.*, *Shawn H. v. Comm'r of Soc. Sec.*, No. 19-CV-113 (JMC), 2020 WL 3969879, at *6 (D. Vt. July 14, 2020) ("Even though ALJs are no longer directed to afford controlling weight to treating source opinions[,] . . . the regulations still recognize the 'foundational nature' of the observations of treating sources, and 'consistency with those observations is a factor in determining the value of any [treating source's] opinion.'" (quoting *Barrett v. Berryhill*, 906 F.3d 340, 343 (5th Cir. 2018)). The Commissioner, however, argues that the

regulations shift how medical opinions are considered by the ALJ, so the review of those decisions should also change. (ECF 15, at 9-17.)

The Commissioner is correct. The Administration is required by regulation to seek out and consider medical opinions, *see* 20 C.F.R. § 404.1512(b)(1), and how it then considers those opinions is left by statute to the Administration's rulemaking authority. *See* 42 U.S.C. § 405(a). The purpose in changing the regulation—removing the hierarchy of different kinds of medical opinions and reducing the number of required factors—was to reduce the automatic deference paid to some medical opinions and thereby increase the discretion left to the ALJ in how to consider each medical opinion. *See* Social Security Administration, *Revisions to Rules Regarding the Evaluation of Medical Evidence*, https://www.ssa.gov/disability/professionals/bluebook/revisions-rules.html (last visited March 29, 2022) ("For claims filed on or after March 27, 2017, our rules about how we consider medical opinions will change. First, we will no longer give any specific evidentiary weight to medical opinions; this includes giving controlling weight to any medical opinion. Instead, we will consider the persuasiveness of medical opinions using the factors specified in our rules."). The Court is required to give effect to those regulations, including the greater discretion they invest in the ALJ to weigh the persuasiveness of medical opinions. *See Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 843-44 (1984) ("If Congress has explicitly left a gap for the agency to fill, there is an express delegation of authority to the agency to elucidate a specific provision of the statute by regulation. Such legislative regulations are given controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute.").

So, the Court is limited to the familiar and forgiving review that the ALJ may not abuse that discretion. *See Smith v. Berryhill*, 139 S. Ct. 1765, 1779 (2019) ("[T]he standard of review [is an] abuse of discretion as to the overall conclusion, and 'substantial evidence' 'as to any fact.'" (quoting 42 U.S.C. § 405(g)). ALJs abuse their discretion when they fail to (1) "consider" the medical-opinion evidence as required by regulation; (2) "articulate" specific and legitimate reasons—particularly the consistency and supportability of the

opinion—for the persuasiveness of the opinion; or (3) support those reasons with "substantial evidence" from the record. *See* 20 C.F.R. § 404.1520c(a) ("[W]e will consider those medical opinions or prior administrative medical findings from that medical source together using the factors listed . . . ."); 20 C.F.R. § 404.1520c(b) ("We will articulate in our determination or decision how persuasive we find all of the medical opinions and all of the prior administrative medical findings in your case record."); 20 C.F.R. § 404.1520c(b)(2) ("The factors of supportability . . . and consistency . . . are the most important factors. . . . We may, but are not required to, explain how we considered the [other] factors . . . ."); 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .").

### 2. *Dr. Easley's Opinion*

The ALJ found Dr. Easley's opinion that Karenlee is limited to sedentary work unpersuasive, concluding that Dr. Easley's evaluation "appear[s] to have been influenced by then-limiting residual effects of the claimant's recent left foot surgery." (AR 20.) The ALJ pointed out that just a few weeks beforehand, Karenlee's treating doctor noted she'd just received authorization to begin weight bearing on that foot in a normal shoe, that she was "ambulatory at a community level," and that she was now walking with a cane. (AR 21 (citing AR 688); *see also* AR 735 (podiatrist ordering her to "walk for 5 minutes and add 100 yards per day as tolerated" a month before Dr. Easley's evaluation).) And the ALJ correctly identified that the record anticipated a "continued course of recovery from this surgery."[1] (AR 20; *see, e.g.*, AR 735 (podiatrist providing exercise plan "so the second metatarsal can become [stronger]").)

---

[1] Unfortunately, those medical records are among the last in the administrative record, so the ALJ was unable to see if that anticipated course of recovery ever came to pass. (*See* ECF 12-1, at 1-3 (AR index listing the various medical records and date ranges, with the last being March 2019).)

An ALJ may discount a medical opinion on the grounds that the doctor may have been influenced by an acute problem that is expected to recover. *See* 20 C.F.R. § 404.1520c(c)(2) (requiring an ALJ to consider how "consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim"); 20 C.F.R. § 404.1513(a)(3) (including "prognosis" as a piece of medical evidence for ALJ consideration). This is particularly true here. Although Karenlee told Dr. Easley about her surgeries, Dr. Easley did not review any medical records nor was he privy to where she was in the recovery process. (*See* AR 669 ("There are no medical records available for review at this time."); *id.* ("The source of information for this evaluation is the claimant who was an adequate historian.").) Finally, the ALJ supported those conclusions by substantial evidence, pointing to the record where Karenlee made gradual but continual improvement with her foot post-surgery. (*See* AR 20.) So, the ALJ did not abuse his discretion in finding Dr. Easley's medical opinion less persuasive.

Karenlee argues that even if the ALJ correctly considered Dr. Easley's report about her foot, the ALJ erred in considering that report regarding her knees, obesity, and back pain, which could support a sedentary restriction on their own. (*See* ECF 13, at 6.) But this reading is not supported by the record. Dr. Easley attributed her difficulty in standing and walking to her left foot issues. First, in his "Station and Gait" analysis, he wrote: "Upon arising, she uses a cane in the right hand for balance with ambulation. She has difficulty bearing weight on her left foot due to the lack of mobility and flexibility of the first and second metatarsal joints, which have recently been fused." (AR 673.) Then again in his "Feet" examination, Dr. Easley stated: "In the standing position, she is unable to flex the toes and has difficulty standing." (AR 674.)

By contrast, although Dr. Easley noted tenderness in Karenlee's knees, he also measured normal range of motion and strength. (AR 674.) He found pain and a reduced range of motion in Karenlee's back but did not link those problems to her limited walking-and-standing ability. (AR 672.) So, the ALJ's reading of Dr. Easley's report attributing her standing-and-walking limitation primarily to her left foot is a reasonable reading of the

record. *See Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) ("[W]hen the evidence is susceptible to more than one rational interpretation, we must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record.").

**B.   Substantial Evidence for "Light Work" Limitation**

Karenlee next objects that the ALJ's conclusion that she can perform light work—including the walking/standing limitation and the lifting/carrying limitation—is unsupported by substantial evidence.[2] "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2008) (citation omitted). "This is a highly deferential standard of review." *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009).

The ALJ concluded that Karenlee could perform light work, which includes "standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday" and lifting "no more than 20 pounds" with "frequent lifting of objects weighing up to 10 pounds." *See* SSR 83-10, 1983 WL 31251, at *6. Karenlee maintains that the ALJ lacked any evidence to support his belief that she could lift that much or walk or stand for six hours in an eight-hour workday. (ECF 13, at 6.) She asserts instead that the ALJ impermissibly substituted his own medical assessment for Dr. Easley's. (ECF 16, at 5.) And she contends that the ALJ ignored her bad knees and back, which would have resulted in a sedentary restriction notwithstanding her foot issues. (*Id.* at 4.)

These arguments lack support in the record. Two different doctors opined that Karenlee could do medium work, which also requires standing or walking for six hours in an eight-hour workday and requires "lifting no more than 50 pounds" with "frequent lifting

---

[2] Embedded within her challenge to the ALJ's rejection of Dr. Easley's sedentary limitation, Karenlee appears to argue that the ALJ's restrictions are unsupported by substantial evidence. While she does not expressly raise this argument, out of an abundance of caution, the Court has interpreted these arguments as a direct challenge to the ALJ's light-work conclusion.

or carrying of objects weighing up to 25 pounds." *See* SSR 83-10, 1983 WL 31251, at *6; (AR 78, 93). Although the ALJ only considered their opinions "somewhat persuasive"—probably because they rendered their opinions before the final foot surgery—he did so by limiting her to light work. (AR 21.) Put another way, the ALJ had three doctors who opined on her capabilities: two at the medium level and one at the sedentary level. He gave valid reasons for finding different pieces of each doctors' analysis persuasive, and therefore supported his determination with substantial evidence. *See Thomas v. Barnhart*, 278 F.3d 947, 956-57 (9th Cir. 2002) ("When there is conflicting medical evidence, the Secretary must determine credibility and resolve the conflict." (citation omitted)); *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995) ("The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." (citation omitted)).

Similarly, Karenlee's argument that the ALJ ignored her bad knees and back lacks merit. The ALJ recounted the medical evidence concerning her knees, including Dr. Easley's finding of "tenderness to palpation over the medial line," but concluded those "findings reasonably support limitations to light exertion and reduced kneeling." (AR 19-20.) Similarly, he discussed her back problems, again including Dr. Easley's diagnosis of "chronic low back pain without radiculopathy," at some length. (AR 18-20.) The ALJ wrestled with the evidence that suggested greater limitation—like the 2017 MRI showing "multilevel degenerative disc disease, facet arthropathy, and ligamentum flavum hypertrophy throughout the lumbar spine"—and that which suggested fewer restrictions—like the 2019 x-ray indicating only "moderate degenerative disc disease of the upper lumbar spine." (AR 18-20.) There is nothing in the record to support Karenlee's supposition that those issues alone would have mandated a conclusion that she was restricted to sedentary jobs, or that the ALJ's light-work restriction lacked substantial evidence.

Karenlee's most persuasive argument is that the ALJ failed to provide a reasoned explanation why he picked light work—with its six-hour walking and standing requirement—instead of limiting her to only four hours of standing and walking, which the

vocational expert testified would render her disabled. (*See* AR 62.) But ultimately this is not an error either. No regulation or statute requires ALJs to eliminate all other rational or supportable readings of the record; they must merely provide a reasonable interpretation of the record and support that interpretation with substantial evidence. *See* 42 U.S.C. § 405(g); *Molina*, 674 F.3d at 1111. The ALJ did so here.

## C.   Subjective Testimony

Finally, Karenlee faults the ALJ for disbelieving her testimony about the severity of her limitations. The ALJ found that Karenlee's "allegation of disabling mental impairments" was unsupported by the medical record or her daily activities. (AR 14.) He concluded that her testimony that she can "walk [only] 50 yards," "is unable to lift even 5 pounds," and can "stand [only] five to 10 minutes before she experiences back pain" to be unpersuasive based on the medical record and her daily activities. (AR 16.) And he determined that her "allegedly disabling left shoulder and back pain" was undermined by the conservative treatment she underwent for those conditions. (AR 19.)

"[T]he ALJ must give specific, clear and convincing reasons in order to reject the claimant's testimony about the severity of the symptoms." *Molina*, 674 F.3d at 1112 (quotation marks omitted). "The clear and convincing standard is the most demanding required in Social Security cases." *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002).

### 1.   *Unsupported by the Medical Record*

"While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence," an ALJ may consider whether claimant's testimony is supported by "the medical evidence." *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).

#### a.   *Mental Impairments*

The ALJ appropriately considered the tension between Karenlee's allegations concerning her restrictive depression and the benign medical record on that point. (*Compare* AR 191 (listing "DEPRESSION" as a mental condition limiting her ability to

work), *with, e.g.*, AR 303 (August 2016 doctor's note assessing "[s]table" "[m]ajor depression"), AR 310-11 (October 2016 note: "anxiety and depression, but not suicidal, no personality change, and no emotional problems"), AR 314 (February 2017: "Major depression" "stable"), AR 318 (April 2017: "Major depression: Stable"), AR 323 (March 2017: "Major depression" "unstable" but no symptoms associated), AR 388 (November 2017: "Not Present- Anxiety and Depression"), AR 579 (March 2018: "Not Present- Anxiety and Depression"), AR 574 (June 2018: "Not Present- Anxiety and Depression"), AR 588 (February 2019: "Major depression: Stable").) In her brief, Karenlee doesn't contest this point and has thus waived any challenge to it. *See Greger v. Barnhart*, 464 F.3d 968, 973 (9th Cir. 2006) (holding that a Social Security "issue is waived" if not raised in briefing before the district court).

      b. *Walking and Standing*

Karenlee contends that the ALJ failed to identify medical evidence to contradict her testimony that she could "walk [only] 50 yards" and "stand [only] five to 10 minutes" without pain. (AR 16; *see, e.g.*, ECF 16, at 6.) The ALJ noted that, after her first foot surgery, Karenlee was reported to have healed well and was "100 percent weight-bearing" eight months later. (AR 16, 392.) He also pointed out that Karenlee "ambulat[ed] without an assistive device, other than some period after her [second] left foot surgery." (AR 19.) And even then, she was walking "with her cane" and was "ambulatory at a community level" five months later. (AR 17.) The ALJ reasonably concluded—and the medical record suggests—that Karenlee is not as limited as she testified.

There is certainly medical evidence of the walking-and-standing problems caused by Karenlee's foot, knees, back, and obesity. But even Dr. Easley, the doctor who restricted her the most, only limited Karenlee to walking and standing two hours out of an eight-hour workday. (*See* AR 677.) Thus, the ALJ rationally concluded from the record that none of Karenlee's problems rose to the extreme level that would limit her to standing only five to ten minutes or walking no more than 50 yards without pain. This Court is bound by that rational interpretation. *See Molina*, 674 F.3d at 1111.

  c. *Unable to Lift 5 to 10 Pounds*

The ALJ offered substantial evidence that the medical record contradicted Karenlee's testimony that she cannot lift "even 10 pounds" and that "even five pounds is pushing it." (*See* AR 52; *see also* AR 16, 20.) The most sympathetic physician, Dr. Easley, concluded that Karenlee could lift 10 pounds "occasionally" and less than 10 pounds "frequently." (AR 675); *see* SSR 83-10, 1983 WL 31251, at *6 ("'Occasionally' means occurring from very little up to one-third of the time. . . . 'Frequent[ly]' means occurring from one-third to two-thirds of the time."). Karenlee doesn't contest this finding, thereby waiving any argument about it. *See Greger*, 464 F.3d at 973 (issues not raised are waived).[3]

In sum, the ALJ appropriately determined that the medical record contradicted Karenlee's claims, and thus it serves as a clear and convincing reason to reject her testimony. *See Rollins*, 261 F.3d at 857.

**2. Daily Activities**

The ALJ found that Karenlee's daily activities contradicted her allegations about both her mental ailments and her physical limitations. (AR 14, 21.) "Inconsistencies between a claimant's testimony and the claimant's reported activities provide a valid

---

[3] An ALJ "may not reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of pain." *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005). But the Ninth Circuit has sometimes treated a *lack* of objective medical evidence differently than a *direct contradiction* with the medical record, as here. For example, in *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155 (9th Cir. 2008), the ALJ rejected claimant's testimony "that he can lift only 10 pounds *occasionally* in favor of Dr. Patton's contradictory opinion that he can lift up to 10 pounds *frequently*." *Id*. at 1161 (emphasis added). The Court held that this sort of "[c]ontradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony." *Id*. The identical type of direct contradiction here could—by itself—justify the ALJ's decision to reject Karenlee's testimony. But this Court need not rely solely on that rationale, as the ALJ provided at least one other valid reason beyond the medical record.

reason for an adverse credibility determination." *Burrell v. Colvin*, 775 F.3d 1133, 1137 (9th Cir. 2014) (citation omitted).

### a. *Mental Disabilities*

The ALJ reasonably contrasted Karenlee's allegations of disabling mental impairments with her ability to "take care of her needs and grooming," "take medication," be "independent in her personal care," "care [for] her elderly mother," "perform[] household chores," "drive, go out alone, shop, and handle finances," and "spend[] time with others." (AR 14.) And Karenlee doesn't argue otherwise. *See Greger*, 464 F.3d at 973 (issues not raised are waived). Thus, the ALJ properly relied on Karenlee's daily activities as a clear and convincing basis for rejecting her testimony about her mental limitations.

### b. *Walking, Standing, and Lifting Five Pounds*

On the other hand, the ALJ did not support his conclusion that her activities of daily living undermine her testimony about her physical limitations. None of the noted daily activities—including handling money, driving, cooking, cleaning, and taking care of her elderly mother—suggest that she can lift more than five pounds, walk more than 50 yards, or stand for longer than ten minutes. *See Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (holding that daily activities must "contradict [claimant's] other testimony" or meet a "threshold for transferable work skills"). The ALJ also mentioned that she could "shop[] in stores" (AR 21), but Karenlee testified that she does so on a motorized wheelchair or leaning against the shopping cart and asks for help for any item over five pounds. (AR 52.) Shopping in stores under such limitations does not contradict her testimony about standing, walking, or lifting. *See Orn*, 495 F.3d at 639. So, Karenlee's daily activities were not a clear and convincing reason to reject her testimony about her physical restrictions.

## 3. *Conservative Treatment*

Finally, the ALJ determined that Karenlee's allegations about disabling pain from her left shoulder and back are belied by the conservative treatment she received for those conditions. (AR 19.) An ALJ can reasonably infer from conservative treatment that the pain is not as serious as a claimant insists. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1040

(9th Cir. 2008). Technically, Karenlee concedes this point by not addressing it. *See Greger*, 464 F.3d at 973 (issues not raised are waived). But the ALJ's reasoning here is flawed. For both her shoulder and back, Karenlee was prescribed Norco. (*See, e.g.*, AR 702.) And "[t]he consistent use of Norco, a strong opioid medication, cannot accurately be described as 'conservative' treatment." *Bucknell v. Berryhill*, No. ED CV 18-0261 AS, 2018 WL 6198459, at *4 (C.D. Cal. Nov. 27, 2018) (collecting cases). Karenlee also received cortisone injections for her left shoulder. (AR 630.) Even more problematically, an orthopedic surgeon recommended surgery to repair her left shoulder. (AR 619.) "[I]njections, prescriptions for narcotic pain medication . . . and also . . . [a] doctor['s] recommendation[] that she undergo surgery" do not constitute conservative treatment. *Vogel v. Colvin*, No. ED CV 15-166-E, 2015 WL 12748243, at *2 (C.D. Cal. Sept. 11, 2015). So, this ground is not clear and convincing, and the Court will not consider it notwithstanding the waiver.

### D. Harmless Error

Next, the Court must decide whether the ALJ's error in relying on two invalid reasons for rejecting Karenlee's subjective testimony is harmless, given the remainder of the ALJ's valid analysis. An ALJ's error will be held harmless when "the ALJ provided one or more invalid reasons" to reject testimony or an opinion, "but also provided valid reasons that were supported by the record." *Molina*, 674 F.3d at 1115. Put another way, an error must be "consequential to the ultimate nondisability determination" to be prejudicial. *Id.* (citation omitted). Claimant bears "the burden to show prejudice." *McLeod v. Astrue*, 640 F.3d 881, 887-88 (9th Cir. 2011).

Karenlee has not met her burden of showing prejudice. In fact, she makes no argument on this point at all. Even without the improper reasons, the ALJ offered a clear and convincing rationale for rejecting Karenlee's testimony: (1) her daily activities contradicted her testimony on her mental disabilities and (2) the medical record failed to support—or directly contradicted—her testimony on at least three topics. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162-63 (9th Cir. 2008) (holding two invalid

reasons for an adverse credibility finding were harmless error considering the remaining valid rationale); *Green v. Saul*, 830 F. App'x 922, 923 & n.2 (9th Cir. 2020) (holding four invalid reasons for an adverse-credibility finding were harmless considering the two remaining valid reasons). The error here was therefore harmless.

## CONCLUSION

Thus, plaintiff Karenlee's summary-judgment motion is denied. The Clerk is directed to issue a judgment and close this case.

**AFFIRMED**.

Dated:  March 30, 2022

_____
Hon. Andrew G. Schopler
United States Magistrate Judge